

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 26, 1960

Honorable R. L. Lattimore                    WW-840
Criminal District Attorney
Edinburg, Texas                              Re: Whether Attorney General's
                                                 Opinion No. MS-94 is in
                                                 conflict with or overruled
                                                 by Opinion No. WW-355
Dear Mr. Lattimore:                              relating to lotteries?

        You have asked whether or not this office still considers Opinion
No. MS-94 to be valid in view of the apparent conflict of this Opinion with
Opinion No. WW-355. Your request further states:

        "We are particularly interested as to whether
        you still consider this opinion governing the legality
        of 'Appreciation Day' or retail trade promotion enter-
        prises [valid]. . . . It would be my opinion that
        Opinion No. WW-355 is definitely in conflict with the
        1953 opinion."

        It is the opinion of this office that Attorney General's Opinion
No. MS-94, rendered on September 25, 1953, is a valid statement of the
laws of this State.

        MS-94 holds that, where an award is made each week to some indivi-
dual by the merchants of a community, it is not a lottery where the award is
determined in the following manner:

        "Coupons are distributed freely to all desiring
        them. The first public approach is by the distribu-
        tion of thousands of printed announcements in the
        trade territory with thousands of these coupons, all
        free. . . .

        "In addition, coupons may be freely had for the
        asking at the office of the sponsoring organization
        . . . and in the places of business of the participat-
        ing merchants. . . .

        ". . . .

        "An individual may, in fact, ask for several coupons,
        or for a particular type of coupon and his request

is honored. Said coupon may be of the same value or varying values indicated by a percentage punched on the coupon. The percentage punched on the coupon will be either 5%, 10%, 20%, 30%, 40%, or 50% entitling the party who has received the coupon and written his or her name and address on the reverse side thereof to that percentage of the fund indicated.

"A thoroughly mixed quantity of the coupons reposes in an open container at the Chamber of Commerce office and in an open container in each store. A visitor may if he desires ask for a 50% coupon and he will receive it. Or he may merely reach into such a container and secure such coupon or coupons as he desires. Visitors are, in fact, invited to do this. . . .

". . . .

"In addition to the above, a coupon is offered to anyone making a purchase in any of the stores. In these instances the percentage punched on the coupon bears a relation to the total amount of the transaction, in order that community surveys may be made periodically to determine the size of the average unit purchase in a given store, the exact boundaries of the trade territory from which a store individually and the business community collectively draws its trade, and the amount of money spent each month in the town from each of the surrounding areas. . . .

"For the drawings, there is no distinction made between coupons distributed freely with the announcement folders, coupons distributed freely from the sponsor's office, coupons obtained freely by being drawn out of customers or non-customers from a container in the establishment of a member merchant, coupons given freely to the members of the audience attending the weekly program, and the 'survey' coupons issued after purchases. . . ."

The plan outlined above is legal, if no discrimination in favor of the customer arises. If, for example, the non-customer had a hard time getting 40% or 50% coupons, but the customer could get "survey" coupons of this type without trouble the plan would then be a lottery since the customer is getting something a non-customer cannot acquire. If at

any time a premium of any kind is allowed the customer over the non-customer, the element of consideration is present and there is a lottery.

Good will and patronage of the persons favored with the coupons is not consideration paid, for the purpose of determining if there is a lottery. Brice v. State, 242 S.W.2d 433 (1951). Also see Attorney General's Opinion WW-652.

In Featherstone v. Independent Service Station Ass'n, 10 S.W.2d 124 (Tex. Civ. App. 1928), the court said:

    ". . . While dealers, under the new plan, dis-
    tributed tickets to non-customers as well as to
    customers, it seems that the scheme was to distri-
    bute tickets, in the main, to customers; . . ."

The courts will look through any subterfuge which tries to hide the element of consideration.

Insofar as WW-355 holds that a consideration is present by virtue of good will and patronage, it is in conflict with the Brice case and the implied holding in MS-94, and WW-355, is overruled to the extent of such conflict.

### SUMMARY

1. Attorney General's Opinion No. MS-94
   is a valid statement of the laws of
   this State relating to lotteries.

2. Attorney General's Opinion No. WW-355
   is overruled insofar as it finds con-
   sideration arising from the good will
   of the participants of the plan.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: Cecil Cammack, Jr.
    Assistant

CC:aw

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman

Marvin Brown
Tom Burrus
Charles D. Cabaniss
James Farris

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    Leonard Passmore